**SKOLNICK LEGAL GROUP, P.C.**
Martin P. Skolnick, Esq.
18 East 41st Street, 6th Floor
New York, NY 10017
Ph: (212) 744-9600
F: (646) 706-7327
martin@skolnicklegalgroup.com
*Attorneys for Respondent*
*Cento Solutions, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
LTF CONSTRUCTION COMPANY,
LLC and LTF CLUB OPERATIONS
COMPANY, INC.,

                Petitioners,                  Case No. 1:20-cv-04097

    -against-

CENTO SOLUTIONS, INC.

               Respondent.
-------------------------------------------------------------------X

**RESPONDENT'S MEMORANDUM OF LAW IN SUPPORT
OF MOTION TO VACATE ARBITRATION AWARD**

SKOLNICK LEGAL GROUP, P.C.
*Attorneys for Respondent*
*Cento Solutions, Inc*

Martin P. Skolnick, Esq.
18 East 41st Street, 6th Floor
New York, NY 10017
Ph: (212) 744-9600
F: (646) 706-7327
martin@skolnicklegalgroup.com

1

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES** ………………………………………....…   ii

**INTRODUCTION** ………………………………………………...   1

**STATEMENT OF FACTS** ………………………………………   1

**LEGAL ARGUMENT** ……………………………………………   3

    **I.**    **THE ARBITRATOR FAILED TO COMPLY WITH THE FEDERAL ARBITRATION ACT, THUS THE AWARD MUST BE VACATED** ………………………………………   3

        **A.**    **IN FAILING TO APPOINT A THREE PERSON ARBITRATION PANEL AS REQUIRED BY THE PARTIES' CONTRACT AND THE FAA RULES OF CONSTRUCTION, THE ARBITRATOR VIOLATED 9 U.S.C. § 5** ………………………………………....   3

        **B.**    **THE ARBITRATOR EXCEEDED HIS POWERS BY DISREGARDING THE TERMS OF THE PARTIES' UNDERLYING CONTRACT IN VIOLATION OF 9 U.S.C. § 10(a)(4)(A)** ……………………………………   5

        **C.**    **IN FAILING TO ISSUE A WELL-REASONED AWARD, THE ARBITRATOR FURTHER VIOLATED 9 U.S.C. § 10(a)(4)** …………………………………..   6

    **II.**    **THE ARBITRATOR'S CONDUCTED VIOLATED THE RESPONDENT'S DUE PROCESS RIGHTS IN MANIFEST DISREGARD FOR THE LAW, THUS THE AWARD MUST BE VACATED** ……………………………………….   8

**CONCLUSION** …………………………………………………..   11

**Table of Authorities**

**Cases**

American Ins. Co. v. Seagull Compania Naviera, S.A.,
   774 F.2d 64 (2d Cir.1985) ........................................................................................ 6

Armstrong v. Manzo,
   380 U.S. 545 (1965) ................................................................................................. 9

CAPUL V. City of New York,
   No. 19 Civ. 4313 (KPF) (S.D.N.Y., May 27, 2020) .............................................. 9

DiRussa v. Dean Witter Reynolds Inc.,
   212 F.3d 818 (2d Cir. 1997) ................................................................................ 6, 9

Gilmer v. Interstate/Johnson Lane Corp.,
   500 U.S. 20 at 33 (1991) ......................................................................................... 9

Government of India v. Cargill, Inc.,
   867 F.2d 130 (2d Cir.1989) .................................................................................... 8

Hall Street Assocs., LLC v. Mattel, Inc.,
   552 U.S. 576, 128 S.Ct. 1396 (2008) .................................................................... 8

Halligan v. Piper Jaffray, Inc.,
   148 F.3d 195 (2d Cir. 1998) ............................................................................... 7, 9

Hill v. Staten Island Zoological Society, Inc.,
   147 F.3d 209 (2nd Cir. 1998) ................................................................................ 4

Jock v. Sterling Jewelers Inc.,
   664 F.3d 113,122 (2d. Cir. 2011) .......................................................................... 6

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,
   808 F.2d 930 (2d. Cir. 1986) ................................................................................. 8

Miss Universe LP, LLLP v. MONNIN,
   952 F. Supp. 2d 591 (2d. Cir. 2013) ..................................................................... 3

Ottley v. Schwartzberg,
   819 F.2d 373 (2d Cir.1987) ................................................................................... 4

ReliaStar Life Ins. Co. of N.Y. v. EMC Nat. Life Co.,
   564 F.3d 81 (2d Cir. 2009) .................................................................................... 6

Siegel v. Titan Indus. Corp.,
   779 F.2d 891 (2d Cir.1985) ................................................................................... 7

United Steel Workers v. Adbill Management Corp.,
   754 F.2d 138 (3d Cir.1985) ................................................................................... 6

<u>Weiss v. Sallie Mae, Inc.,</u>
Dkt No. 18-2362, Slip Op (2d Cir. Sept. 12, 2019) ............................................................... 8

<u>Westerbeke Corp. v. Daihatsu Motor Corp.,</u>
304 F.3d 200 (2d Cir. 2002) .................................................................................................. 6

**<u>Statutes</u>**

9 U.S.C. § 5 ........................................................................................................... 1, 3, 4, 5

9 U.S.C. § 10(a)(4) ..................................................................................................... 1, 5, 6

U.S.C. § 10(a) ................................................................................................................... 3

**<u>Rules</u>**

AAA Rules of Construction ................................................................................. 4, 5, 6, 7, 10, 11

Rule- 47(a) ....................................................................................................................... 7

Rule- 47(b) ....................................................................................................................... 7

Section L-3(a) ................................................................................................................... 5

Section L-5 ....................................................................................................................... 7

**INTRODUCTION**

Respondent Cento Solutions, Inc. ("Respondent" or "Cento") submits this memorandum of law in support of its motion to vacate the arbitration award (the "Award") rendered by Arbitrator Seamus P. O'Meara in the proceeding entitled In re the Arbitration of LTF Construction Company, LLC and LTF Club Operations, Company, Inc. and Cento Solutions, Inc on March 17, 2020 (the "Arbitration").

The Petition to confirm the Award should be denied and the Award should be vacated as it (1) was issued in clear violation of the contract between the parties in violation of 9 U.S.C. § 5, (2) is the product of an arbitrator who exceeded the scope of his powers, in violation of 9 U.S.C. § 10(a)(4), (3) fails to provide a reasoned decision for the Award in further violation of 9 U.S.C. § 10(a)(4)A, and (4) is the result of the arbitrator's manifest disregard for the law in violating Respondent's due process rights during this arbitration process.

**STATEMENT OF FACTS**

On or about February 12, 2018, Respondent Cento Solutions, Inc. ("Respondent" or "Cento") and Petitioners LTF Construction Company, LLC ("LTF Construction") and LTF Club Operations Company, Inc. ("LTF Club Operations") (collectively, "Petitioners") entered into a contract for Cento's general construction services (the "Contract") See Centrella Dec. at **Ex. A**. Pursuant to the Contract, Cento would serve as a subcontractor, providing general construction services to LTF Construction, the general contractor for the construction of the Lifetime Athletic Club in Chappaqua, New York (the "Project"). Id. at ¶¶ 5-7.). LTF Club Operations was the owner of the Project. Id. at ¶ 8. Thereafter, Petitioners alleged that Cento had breached the contract and were exercising their rights to enforce arbitration in accordance with the terms of the Contract. Id.

at ¶¶ 9-10. On or about September 20, 2018, Petitioners filed their Demand for Arbitration seeking damages "in excess of $815,000." Id. at **Ex. B**. Thereafter, Cento retained an attorney and participated in the arbitration process until mid-February of 2020 when the arbitrator scheduled the arbitration for March 4, 2020 and advised Cento that its cost to participation in the arbitration was approximately $35,000. Id. at ¶¶ 12-13. Relying upon Petitioners' filed arbitration demand for $815,000, believing it did not owe this amount, and calculating its attorneys' fees to-date and the additional costs and fees to attend the arbitration, Cento determined it would be more cost effective to not appear for the arbitration. Id. at ¶ 14. On February 19, 2020, Cento's attorney notified the AAA that he would no longer be representing Cento in the arbitration and requested the upcoming hearing be postponed to allow Cento to hire new counsel. Id. at **Ex. C**. On March 20, 2020, the AAA notified the parties' the Cento's postponement request had been denied and the hearing would move forward on March 4th. Id. at **Ex. D**. That same day numerous emails were exchanged between Cento and the AAA in which Cento made repeated requests for additional time to retain new counsel, all of which were denied by the arbitrator. Id. at **Ex. D.** Upon information and belief, on March 3, 2020, the Petitioners filed a revised damages claim for an amount exceeding $1,800,000. Id. at **Ex. F**. Respondent was never notified by the AAA that this revised damages claim had been submitted. Id. at ¶ 27. The arbitration took place on March 4, 2020. Id. at ¶ 22. On March 17, 2020, the arbitrator entered an award against Cento for damages in the amount of $1,866,027.36. ("Award"). Id. at **Ex. E**. Therein, the arbitrator held Cento solely responsible for all fees and expenses of the arbitration in the amount of $21,962.50. Id. The Award lacks any reasoned opinion or justification for the exorbitant amount of the award or the full allocation of costs and expenses to Cento. Id.

For the reasons set forth more fully below, the Award should be vacated.

**LEGAL ARGUMENT**

I.    **THE ARBITRATOR FAILED TO COMPLY WITH THE FEDERAL ARBITRATION ACT, THUS THE AWARD MUST BE VACATED**

Title 9 of the United States Code, more commonly known as The Federal Arbitration Act ("FAA"), governs the arbitration in this matter. Paragraph 11.6 of the Contract explicitly provides, "The parties acknowledge and agree that this Subcontract affects interstate commerce and is, therefore, governed by the Federal Arbitration Act. Id. at **Ex. A**.

The FAA sets forth the primary grounds for vacatur of an arbitration award:

(1) where the award was procured by corruption, fraud, or undue means;
(2) where there was evident partiality or corruption in the arbitrators, or either of them;
(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a); Miss Universe LP, LLLP v. MONNIN, 952 F. Supp. 2d 591, 599 (2d. Cir. 2013).

In arbitrating the Parties' disputes and rendering his decision, the Arbitrator breached numerous provisions of the FAA. Accordingly, the Award should be vacated.

A.    **IN FAILING TO APPOINT A THREE PERSON ARBITRATION PANEL AS REQUIIRED BY THE PARTIES' CONTRACT AND THE AAA RULES OF CONSTRUCTION, THE ARBITRATOR VIOLATED 9 U.S.C. § 5**

The FAA expressly requires that where the parties to an arbitration agreement determine the method for appointing arbitrators, the method for appointment be followed. 9 U.S.C. § 5.

If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall

3

fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 U.S.C. § 5. The court should vacate an arbitration award if the method provided by the parties' agreement for selecting arbitrators is not followed because the award would have been made by arbitrators not appointed in accordance with the method provided by the parties' contract. "Parties to an arbitration may stipulate the issues they want determined and increase or limit the arbitrator's contractual authority by their express submission." Hill v. Staten Island Zoological Society, Inc., 147 F.3d 209, 214 (2nd Cir. 1998) (referencing Ottley v. Schwartzberg, 819 F.2d 373, 376 ((2d Cir.1987)).

Paragraphs 11.3 and 11.4 of the Contract set forth the Parties' mutual arbitration requirements in the event of an unresolved dispute and read, in relevant part,

> 11.3.        Any claim that is not resolved by mediation shall be resolved by arbitration. The parties agree that the AAA Construction Industry Arbitration Rules in effect at the time of the Claim shall govern the arbitration….
>
> 11.4.        The parties will attempt to agree upon a mutually acceptable arbitrator. If the parties cannot agree on an arbitrator within five (5) business days after delivery of the demand for arbitration, then the parties will each select a qualified arbitrator (with no professional conflicts of interest….) to serve as an arbitrator in the dispute, and those two arbitrators will mutually select a similarly qualified third person who will serve as the sole arbitrator. **If the AAA rules require a panel of three arbitrators due to the size of the dispute, then the two party-selected arbitrators plus the third arbitrator will serve as the required panel of three arbitrators.**

(Emphasis added) See Centrella Dec. **Ex. A**.

On or around September 18, 2020, Petitioners' submitted their additional Demand for Arbitration seeking damages "in excess of $815,000". Id. at **Ex. B**. Pursuant to the AAA Rules of

Construction, unless the parties' contract states otherwise, claims for amounts less than $1,000,000 will be heard by a single arbitrator. While only a single arbitrator was required at the outset of this matter, during or just prior to the arbitration, Petitioners increased the amount of their claim to more than $1,866,027.36, thereby triggering the application of the AAA's LCC Procedures which required a panel of three (3) arbitrators.

Section L of the AAA's Rules of Construction govern Procedures for Large, Complex Construction Disputes (the "LCC Procedures"). Section L-3(a) of the LCC Procedures provides, "Large Complex Construction Cases shall be heard and determined by either one or three arbitrators, as may be agreed upon by the parties. If the parties are unable to agree, three arbitrators shall hear the case. Id. at **Ex. G.** Indeed, Paragraph 11.4 of the Contract contemplated such an event and required such appointment.

The arbitrator was, or should have been, aware of the Contract requirement, as the Petitioners included the relevant portions of the Contract in their Demand for Arbitration. Id. at **Ex. B**.  Furthermore, as an employee or agent of the AAA, the arbitrator was obligated to be knowledgeable of the procedural guidelines in the Rules of Construction. Yet, despite both the Parties' contractual requirements and the AAA's consistent requirement, the arbitrator proceeded with the hearing despite the fact that he was unauthorized to do so. Cento's representative was not present at the arbitration, nor was he advised prior to the hearing that the amount of the demand had increased such that a three-person arbitration panel was now required under the terms of the parties' contract and the AAA Rules of Construction. Id. at ¶ 27. The Arbitrator's Award was in clear violation of the 9 U.S.C. § 5, and should be vacated.

**B.  THE ARBITRATOR EXCEEDED HIS POWERS BY DISREGARDING THE TERMS OF THE PARTIES' UNDERLYING CONTRACT AND THE RULES OF CONSTRUCTION IN VIOLATION OF 9 U.S.C. §10(a)(4)(A)**

The Second Circuit has "'consistently accorded the narrowest of readings' to section 10(a)(4) permitting vacatur where the arbitrator has exceeded her powers." <u>Jock v. Sterling Jewelers Inc.</u>, 646 F.3d 113, 122 (2d Cir. 2011) (internal quotations omitted) (quoting <u>ReliaStar Life Ins. Co. of N.Y. v. EMC Nat. Life Co.,</u> 564 F.3d 81, 85 (2d Cir. 2009)). The central inquiry when examining vacatur under § 10(a)(4) is "whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue." <u>Westerbeke Corp. v. Daihatsu Motor Corp.</u>, 304 F.3d 200, 220 (2d Cir. 2002) (quoting <u>DiRussa v.</u> <u>Dean Witter Reynolds Inc.</u>, 212 F.3d 818, 824 (2d Cir. 1997)) (quotations omitted). Here the Arbitrator did not.

As set forth in detail, <u>supra</u>, the Arbitrator heard and rendered an Award in this matter, despite the fact that the Contract, the FAA and the AAA Rules of Conduct required a three-arbitrator panel to hear the case and render an Award. In so doing, the Arbitrator clearly exceeded his power requiring the Award be vacated.

### C. IN FAILING TO ISSUE A WELL-REASONED AWARD, THE ARBITRATOR FURTHER VIOLATED 9 U.S.C. §10(a)(4)

When it is determined that an arbitration award inappropriate lacks the requisite well-reasoned opinion, many courts opt to remand the matter for further arbitration. "A remand for further arbitration is appropriate in only certain limited circumstances such as when an award is incomplete or ambiguous." <u>United Steel Workers v. Adbill Management Corp.</u>, 754 F.2d 138, 141 (3d Cir.1985) (citation omitted). Indefinite, incomplete, or ambiguous awards are remanded "so that the court will know exactly what it is being asked to enforce." <u>American Ins. Co. v. Seagull Compania Naviera, S.A.</u>, 774 F.2d 64, 67 (2d Cir.1985). We have observed that "courts on occasion may remand awards to arbitrators to clarify the meaning or effect of an award, or to

determine whether the arbitrator has in some way exceeded his powers." Siegel v. Titan Indus. Corp., 779 F.2d 891, 894 (2d Cir.1985) (per curiam) (citations omitted).

However, in instances, such as here, where the arbitrator so clearly exceeded his powers so as to exhibit a manifest disregard for the law, Second Circuit courts have found have determined that the award must be vacated as a matter of law. See e.g. Halligan v. Piper Jaffray, Inc., 148 F.3d 195, 204 (2d Cir. 1998).

As set forth in detail, supra, the Contract provided that the appropriate AAA Rules of Construction would govern any arbitration between the parties. See Centrella Dec., **Ex. A**. When the Petitioners increased their demand to an amount exceeding $1,000,000 on the day preceding the hearing, the arbitration procedures shifted to those governing large construction cases, the LCC Procedures.  Section L-5 of the LCC's procedures provides that "In addition to the award requirements set forth in R-47(a) and (b) unless the parties agree otherwise, the arbitrator shall issue a reasoned award. See Centrella Dec., **Ex. G**.

In the present matter, Arbitrator O'Meara's Arbitration Award is devoid of reason, setting forth no basis for his decision and merely awarding damages to the petitioners in blatant violation of the Parties' contractual arbitration provisions. Id., **Ex. E**. The LCC's "reasoned award" requirement is particularly necessitated in the present matter where the amount of the Arbitrator's Award was more than $1,000,000 above the Petitioners' initial demand which they amended less than twenty-four (24) hours prior to the arbitration hearing. Id., **Ex. F**.

The Arbitrator's violations of both federal law and the Construction Rules of the AAA have highly prejudiced Cento. The award of damages, costs and fees was excessive and wholly unreasoned. The numerous examples of the Arbitrator's excessive use of power clearly warrant that this Court follow the reasoning set forth in the Halligan decision and vacate the Award in its

entirely.

## II.     THE ARBITRATOR'S CONDUCT VIOLATED THE RESPONDENT'S DUE PROCESS RIGHTS IN MANIFEST DISREGARD FOR THE LAW, THEREBY NECESSITATING THE AWARD BE VACATED

The arbitrator's conduct throughout the arbitration violated Respondent's due process rights. His resulting Award constitutes "fruit of the poisonous tree" and a manifest disregard for the law which should be vacated. In 2008, the Supreme Court rendered its decision in Hall Street Assocs., LLC v. Mattel, Inc. 552 U.S. 576, 128 S.Ct. 1396 (2008), holding that the only bases for vacating an arbitral award are the ones expressly stated in the FAA, which does not include manifest disregard, but declined to rule that manifest disregard was dead. Id. at 1399, fn. 2.  However, U.S. federal appeals courts have reached conflicting conclusions as to whether manifest disregard continues to be a viable basis for challenging arbitral awards after Hall Street.

In its recent opinion in Weiss v. Sallie Mae, Inc., Dkt No. 18-2362, Slip Op (2d Cir. Sept. 12, 2019), the Second Circuit made clear that manifest disregard continues to provide a valid basis for challenging awards. The court reiterated, however, that "[a] litigant seeking to vacate an arbitration award based on an alleged manifest disregard of the law bears a heavy burden." Slip Op. at 9. The reach of the doctrine is "severely limited." Government of India v. Cargill, Inc., 867 F.2d 130, 133 (2d Cir.1989).

Manifest disregard "clearly means more than error or misunderstanding with respect to the law." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker, 808 F.2d 930, 933 (2d. Cir. 1986). Indeed, to modify or vacate an award on this ground, a court must find both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and

clearly applicable to the case. Halligan, 148 F.3d 197 at 203, referencing Dirussa, 121 F.3d at 821. Of particular relevance here, the Supreme Court has held that "claimed procedural inadequacies" in arbitration "are best left for resolution in specific cases." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 at 33 (1991). Further, "when a reviewing court is inclined to hold that an arbitration panel manifestly disregarded the law, the failure of the arbitrators to explain the award can be taken into account." Halligan, 148 F.3d 197 at 204. Both Gilmer and Halligan require that this Court review the arbitrator's actions and his excessive and unreasoned award under the "manifest disregard of the law" standard.

It is indisputable that a violation of a party's right to due process warrants the application of this defense. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." CAPUL V. City of New York, No. 19 Civ. 4313 (KPF) (S.D.N.Y., May 27, 2020) (citing Armstrong v. Manzo, 380 U.S. 545, 552 (1965). Here, the arbitrator deprived Cento of its fundamental due process rights to receive notice of a last minute, million dollar increase in the petitioners' claimed damages and to afford Cento an opportunity to present a revised defense in light of same.

As stated, supra, Cento actively participated in the arbitration process for nearly two years. See Centrella Dec., ¶ 12. At that time, Cento's owner, relying upon the amount of Petitioner's claim set forth in the demand, determined he could no longer afford to participate in the process or pay his attorney's fees and terminated his attorney's representation of Cento. Id. at ¶ 14. On February 19, 2020, Cento's counsel notified the

arbitrator and Petitioner that he was withdrawing as Cento's attorney and requested the upcoming hearing cancelled to allow Cento time to retain new counsel. Id. at **Ex. C**. On February 20, 2020, the Arbitrator denied Cento's attorney's request and advised the arbitration on March 4, 2020 would not be postponed. Id. at **Ex. D**. There followed numerous emails between Cento's owner and the arbitrator's representative wherein Cento repeatedly requested an adjournment of the arbitration to afford it time to retain new counsel. All requests were denied by the arbitrator. On March 3, 2020, one day prior to the Arbitration, the Petitioners filed an updated damage summary, increasing the amount of their alleged damages by over one million dollars.  Id at **Ex. F**.

Until that time, Cento's owner had been receiving notices of proceeding updates from the arbitrator's office. However, received no notice that Petitioners had filed an Updated Damage Summary on the eve of the arbitration. Id. at ¶ 27. Additionally, as Petitioner's increased claim for damages triggered the AAA requirement that the matter be transferred to the Large, Complex Construction Dispute track, the arbitrator was required to adjourn the hearing in order to assemble a panel of three (3) arbitrators rather than one who were then required to issue a "reasoned award". Id. at **Ex. G**. Had it been aware of the drastic and last minute increase in Petitioners' claims, Cento could have renewed its request for an adjournment of the arbitration to hire counsel, would have enforced the requirement that the case be transferred to the Complex Construction track or, at a minimum, participated in the proceedings without counsel. Id. at ¶ 27.

In blatant disregard for Cento's due process rights to a reasonable adjournment to retain new counsel and to be informed of Petitioner's increased damages claim and the opportunity to appear pro se in light of the extreme change in circumstances, and in further

10

disregard for the parties' contractual requirements, his obligations under the AAA Rules of Construction and his lack of authority to preside solely over the arbitration, the arbitrator conducted the hearing on March 4th and, on March 17th, rendered a wholly unreasoned award against Cento in the amount of $1,866,027.36, in further violation of the Large Construction AAA Rules.

Throughout the arbitration process, the Arbitrator demonstrated flagrant contempt for Cento's due process rights to present a defense as well as his right to have the matter be arbitrated by a panel of three (3) arbitrators rather than one as well as his limited power to preside over this arbitration under the AAA Rules of Conduct. The Arbitrator's actions are a clear example of a manifest disregard for the law and the resulting Award must be vacated.

**<u>CONCLUSION</u>**

For the reasons set forth more fully above, the arbitration award should be vacated in its entirety.

Respectfully Submitted,

SKOLNICK LEGAL GROUP, P.C.
*Attorneys for Respondent*
*Cento Solutions, Inc.*

Date:  July 21, 2020       By:    /s/  Martin P. Skolnick
Martin P. Skolnick, Esq.
18 East 41st Street, 6th Floor
New York, NY 10017
(212) 744-9600

11

## **CERTIFICATE OF SERVICE**

      I, Martin P. Skolnik, Esq. certify that, on July 21, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

                     /s/ Martin P. Skolnick
                     Martin P. Skolnick, Esq.