```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
---------------------------------------
| LTF CONSTRUCTION COMPANY, LLC;      |
| LTF CLUB OPERATIONS COMPANY,        |
| INC.,                               |
|                                     |
|                   Petitioners,      |
|                                     |
| -against-                           |
|                                     |
| CENTO SOLUTIONS INC.,               |
|                                     |
|                   Respondent.       |
---------------------------------------

No. 20-CV-4097 (LAP)

MEMORANDUM & ORDER

LORETTA A. PRESKA, Senior United States District Judge:

Petitioners LTF Construction Company, LLC and LTF Club Operations Company, Inc. (collectively, "LTF") filed the instant action against Respondent Cento Solutions, Inc. ("Cento"), seeking to confirm an arbitration award ("the Award") totaling more than $1.8 million.[1]  Cento has moved to vacate the Award.[2]

---

[1] (Petition to Confirm Arbitration Award ("Petition"), dated May 28, 2020 [dkt. no. 1] at 7; see also Petitioners' Memorandum of Law in Opposition to Respondent's Motion to Vacate and in Further Support of Petition to Confirm Arbitration Award, dated Aug. 4, 2020 [dkt. no. 18]; Affirmation of Eric A.O. Ruzicka ("Ruzicka Aff."), dated Aug. 4, 2020 [dkt. no. 19].)  LTF also seeks statutory interest, see N.Y. C.P.L.R. §§ 5002-5003, and the costs of this action.  (See Petition at 7.)

[2] (See Notice of Respondent's Motion to Vacate the Arbitration Award, dated July 21, 2020 [dkt. no 12]; see also Respondent's Memorandum of Law in Support of Motion to Vacate Arbitration Award ("Cento Br."), dated July 21, 2020 [dkt. no 13]; Declaration of James Centrella ("Centrella Decl."), dated July 17, 2020 [dkt. no. 14]; Respondent's Memorandum of Law in Further Support of Motion to Vacate Arbitration Award ("Cento Reply"), dated Aug. 11, 2020 [dkt. no 21].)

1

For the reasons below, LTF's petition is GRANTED, and Cento's motion is DENIED.

I. **Background**

In February 2018, LTF and Cento entered into a contract ("the Contract") related to the construction of a fitness club in Chappaqua, New York.  (See Exhibit A to Centrella Decl. ("Contract"), dated Feb. 16, 2018 [dkt. no. 14-1] at 1.)  LTF served as general contractor, and Cento was a subcontractor. (Id.)  The relationship soon soured, however, and LTF filed a demand for arbitration with the American Arbitration Association ("AAA") on September 20, 2018.  (Exhibit B to Centrella Decl. ("Initial Statement of Claim"), dated Sept. 20, 2018 [dkt. no. 14-2].)  LTF alleged numerous breaches of the Contract by Cento and sought damages of $815,000.  (Id. at 1, 3-4.)  The Contract provided that the AAA Construction Industry Arbitration Rules ("CIA Rules") and the Federal Arbitration Act ("FAA") would govern any arbitration.  (Contract ¶ 11.3.)

On April 23, 2019, Arbitrator Shamus P. O'Meara ("O'Meara") held a preliminary hearing at which both parties' counsel appeared.  (Exhibit 8 to Ruzicka Aff., dated Apr. 23, 2019 [dkt. no. 19-8].)  At the hearing, the parties (1) agreed to exchange their Statement of Claim and Statement of Counterclaim on June

17, 2019, (2) mutually requested a "standard award,"³ and (3) received notice that the hearing was scheduled to begin on November 11, 2019. (Id. ¶¶ 1, 10, 12.) The November 11 hearing was suspended due to ongoing mediation efforts. (See Exhibit 12 to Ruzicka Aff., dated Aug. 12, 2019 [dkt. no. 19-1].)

Those efforts ultimately proved unsuccessful, however, and LTF pressed on with arbitration. (See Ruzicka Aff. ¶ 9.) Cento actively--if at times sporadically⁴--participated in the arbitration proceedings. Specifically, Cento (1) responded to LTF's claims and filed a counterclaim of its own, (see id. ¶ 22); (2) objected to the initial arbitrator's selection before agreeing to proceed before O'Meara, (see Exhibit 2 to Ruzicka Aff., dated Mar. 4, 2019 [dkt. no. 19-2]); (3) appeared at a December 19, 2019 preliminary hearing where the parties agreed to exchange witness and exhibit lists by January 27, 2020, (see

---

³ A "standard award"--"also referred to as a 'general,' 'regular,' or 'bare' award"--does not include factual findings or an explanation of the arbitrator's reasoning; it "simply announces the result." Tully Const. Co./A.J. Pegno Const. Co., J.V. v. Canam Steel Corp., No. 13 Civ. 3037 (PGG), 2015 WL 906128, at *13 (S.D.N.Y. Mar. 2, 2015).

⁴ For example, Cento failed to appear for scheduled preliminary hearings. (See, e.g., Exhibit 17 to Ruzicka Aff., dated Nov. 5, 2019 [dkt. no. 19-17].) Similarly, Cento did not comply with agreed-upon deadlines regarding document production, although it did produce documents after receiving an extension of time. (See Exhibit 17A to Ruzicka Aff., dated Nov. 8, 2019 [dkt. no. 19-18]; Exhibit 20 to Ruzicka Aff., dated Dec. 18, 2019 [dkt. no. 19-21].)

Exhibit 20A to Ruzicka Aff., dated Dec. 19, 2019 [dkt. no. 19-22] ¶ 4), and (4) cooperated to set the arbitration hearing dates for March 2, 2020 to March 4, 2020, (see Exhibit 21 to Ruzicka Aff., dated Dec. 31, 2019 [dkt. no. 19-23]).

But in mid-February 2020, Cento's strategy changed.  After Cento learned that it would cost about $35,000 to participate in the arbitration, James Centrella, Cento's Managing Partner, determined that it would be more cost-effective not to appear at all.  (See Centrella Decl. ¶¶ 13, 14.)  On February 19, Cento's attorney notified the AAA that he had been discharged and requested that an upcoming hearing be postponed so that Cento could retain new counsel.  (See Exhibit C to Centrella Decl., dated Feb. 19, 2020 [dkt. no. 14-3] at 1.)  O'Meara denied a postponement, despite repeated requests from Mr. Centrella to delay.  (See Exhibit D to Centrella Decl., dated Feb. 20, 2020 [dkt. no. 14-4].)

On February 20, O'Meara held another preliminary hearing. (Exhibit 26 to Ruzicka Aff., dated Feb. 20, 2020 [dkt. no. 19-28].)  As of that time, Cento had not yet provided its witness or exhibit lists.  (Id.)  Despite Cento's failure to appear, O'Meara extended Cento's deadline to provide those documents until 5:00 p.m. that evening.  (Id.)  But Cento never provided the documents, and it failed to appear at a final preliminary hearing on February 24.  (See Exhibit 27 to Ruzicka Aff., dated

Feb. 24, 2020 [dkt. no. 19-29].)  As a result, O'Meara granted LTF's motion in limine and forbid Cento from introducing any exhibits or calling any witnesses at the hearing.  (Id. ¶ 1.) O'Meara also rescheduled the arbitration to begin at 9:00 a.m. on March 3.  (Id. ¶ 2.)

On March 3, LTF provided its final exhibits to Cento, which included an updated damages summary.  (See Ruzicka Aff. ¶ 19; Exhibit 29 to Ruzicka Aff., dated Mar. 3, 2020 [dkt. no. 19-31]; Exhibit 30 to Ruzicka Aff., dated Mar. 3, 2020 [dkt. no 19-32].) In that summary, LTF claimed more than $1.8 million in damages, which was significantly higher than LTF's initial demand.  (See Initial Statement of Claim at 3-4).  The amount was also significant because the CIA Rules require a panel of three arbitrators and a "reasoned award" for damages claims exceeding $1 million.  See AAA Constr. Indus. Arb. R. L-1, L-3, L-5.

Although Cento claims to have never received notice of that revised damages figure, (see Centrella Decl. ¶ 27), the record shows that LTF provided notice as early as June 2019 that it was seeking damages in excess of $1.9 million.  (Exhibit 10 to Ruzicka Aff., dated June 17, 2019 [dkt. no. 19-10] at 3; see also Exhibit 9 to Ruzicka Aff., dated June 19, 2019 [dkt. no 19-9].)  Further, LTF produced documents supporting that $1.9 million figure, some of which Cento re-produced as part of its own document production.  (See Exhibit 24 to Ruzicka Aff., dated

5

Aug. 4, 2020 [dkt. no. 19-26] (including a defense Bates stamp).)  Notwithstanding that notice, Cento did not insist on a reasoned award or object to proceeding solely before O'Meara.

The arbitration went forward as scheduled on March 3.  (See Exhibit 28 to Ruzicka Aff., dated Feb. 24, 2020 [dkt. no. 19-30].)  Cento did not appear to challenge LTF's evidence.  (See Centrella Decl. ¶ 22; Ruzicka Aff. ¶¶ 30-31; Exhibit 31 to Ruzicka Aff., dated Mar. 4, 2020 [dkt. no 19-33].)  On March 4, O'Meara formally closed the hearing and confirmed that there would be no further briefing.  (Id. at 1.)  On March 17, O'Meara issued the Award, holding Cento liable for (1) $1,866,027.36 in damages and (2) $21,962.50 in fees and expenses.  (Exhibit 4 to Petition, dated Mar. 17, 2020 [dkt. no. 1-4] ¶¶ 1-2; Exhibit E to Centrella Decl., dated Mar. 17, 2020 [dkt. no. 14-5] ¶¶ 1-2 (same document).)  The AAA served the Award on Cento the same day, (Centrella Decl. ¶ 23; Ruzicka Aff. ¶ 36), and Cento did not seek any post-judgment process related to the Award before O'Meara, (id. ¶ 37).  This action followed.

**II.  Legal Standard**

"The role of a district court in reviewing an arbitration award is narrowly limited," and an arbitrator's "determinations are generally accorded great deference under [federal law]." Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr., 729 F.3d 99, 103 (2d Cir. 2013) (quotation marks omitted).

The FAA mandates that an arbitration award be confirmed absent an affirmative showing that a specific ground for vacating it exists.  See 9 U.S.C. § 9; Jock v. Sterling Jewelers Inc. ("Jock I"), 646 F.3d 113, 121 (2d Cir. 2011).  Section 10(a) of the FAA provides four grounds for vacatur, two of which are relevant here.

First, a court may vacate an arbitration award where, inter alia, "the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown."  9 U.S.C. § 10(a)(3).  But "[f]ederal courts do not superintend arbitration proceedings," and this Court's "review is restricted to determining whether the procedure was fundamentally unfair." Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 20 (2d Cir. 1997).  "[A]rbitrators enjoy broad latitude in exercising their discretion to grant or deny a request to adjourn," Mandell v. Reeve, No. 10 Civ. 6530 (RJS), 2011 WL 4585248, at *4 (S.D.N.Y. Oct. 4, 2011), and the Court "will not interfere with an award . . . as long as there exists a reasonable basis for the arbitrator['s] refusal to grant a postponement," Rai v. Barclays Capital Inc., 739 F. Supp. 2d 364, 371 (S.D.N.Y. 2010).

Second, vacatur is also appropriate "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(4).  That provision

is construed narrowly, Jock I, 646 F.3d at 122, and the inquiry trains on "whether the arbitrator had the power . . . to reach a certain issue, not whether the arbitrator correctly decided that issue." Jock v. Sterling Jewelers Inc., 942 F.3d 617, 622 (2d Cir. 2019) (cleaned up), cert. denied, No. 19-1382, 2020 WL 5882321 (U.S. Oct. 5, 2020).

Alternatively, a "court may set aside an arbitration award if it was rendered in manifest disregard of the law." Weiss v. Sallie Mae, Inc., 939 F.3d 105, 109 (2d Cir. 2019). To vacate for manifest disregard, the Court must identify "something beyond and different from a mere error in the law or failure on the part of the arbitrator[ ] to understand or apply the law." Westerbeke Corp. v. Daihatsu Motor Co., 304 F.3d 200, 208 (2d Cir. 2002). "Rather, the award should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached." T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 339 (2d Cir. 2010) (quotation marks omitted).

### III. Discussion

Cento raises four points in support of vacatur: (1) O'Meara violated 9 U.S.C. § 5 by failing to appoint a three-arbitrator panel, see Cento Br. at 3-5; (2) O'Meara exceeded his authority by not convening a three-arbitrator panel and by not rendering a reasoned award, see id. at 5-8; (3) O'Meara's conduct violated
8

Cento's due process rights in manifest disregarded of the law, see id. at 8-11; and (4) O'Meara's refusal to adjourn the proceedings was fundamentally unfair and a manifest disregard of the law, see Cento Reply at 2-6.  None is persuasive.

### a. 9 U.S.C. § 5

Cento first contends that the Award was issued "in clear violation of . . . 9 U.S.C. § 5." (Cento Br. at 5.)  That provision provides, in relevant part, that "[i]f in the agreement provision be made for a method of naming or appointing an arbitrator . . . , such method shall be followed."  9 U.S.C. § 5.  Cento posits that the Contract's agreed-upon method was not followed because the CIA Rules--which the Contract incorporated--require a three-arbitrator panel to hear claims for damages in excess of $1 million.  (See Cento Br. at 4-5.) Cento asserts that O'Meara "was, or should have been, aware of the Contract requirement," but he "proceeded with the hearing despite the fact that he was unauthorized to do so."  (Id. at 5.)  On that basis, Cento maintains that the Award "should be vacated."  (Id.)

Section 5 cannot do the work that Cento requires of it. Section 5 "merely provides default rules for appointing an arbitrator in the event an arbitration agreement is silent." Doscher v. Sea Port Grp. Sec., LLC, 832 F.3d 372, 385 n.19 (2d Cir. 2016).  It does not provide a basis for vacating an

9

arbitration award. To the contrary, Section 10 of the FAA and caselaw delineate the "very narrow set of circumstances . . . that warrant vacatur." Leeward Constr. Co., Ltd. v. Am. Univ. of Antigua-Coll. of Med., 826 F.3d 634, 638 (2d Cir. 2016). Cento bears the burden to establish those circumstances, see id., and it cannot mobilize Section 5 to make an end run around that obligation.

### b. O'Meara's Authority

Cento next avers that, by issuing the Award, O'Meara exceeded his authority under the Contract. (See Cento Br. at 5-8.) Cento, partially repackaging its Section 5 argument, maintains that O'Meara exceeded his authority by violating two CIA Rules. First, the CIA Rules required a three-arbitrator panel to hear LTF's $1.8 million damages claim. (See id. 5-6.) And second, those Rules also mandated a "reasoned" award instead of "standard" one. (See id. at 6-8.) Because O'Meara, indisputably, did not do either of those things, Cento maintains that the Award must be vacated. (See id. at 6, 8.)

Cento is correct that the CIA Rules require damages claims of more than $1 million to (1) be presented to three arbitrators and (2) be resolved by a reasoned award. See AAA Constr. Indus. Arb. R. L-1, L-3, L-5. But Cento overlooks another critically important provision incorporated by the Contract: CIA Rule R-42. That Rule provides that "[a]ny party who proceeds with the

10

arbitration after knowledge that any provision or requirement of these Rules has not been complied with and who fails to state an objection in writing shall be deemed to have waived the right to object." AAA Constr. Indus. Arb. R. R-42.  At no point did Cento lodge an objection--much less in writing--to O'Meara's issuing a standard award or to proceeding before a sole arbitrator.  That "failure constitutes a waiver."  Oldcastle Precast, Inc. v. Liberty Mut. Ins. Co., No. 7:16-CV-01914 (NSR), 2019 WL 1171564, at *6 (S.D.N.Y. Mar. 12, 2019), amended on other grounds by 2019 WL 5884528 (S.D.N.Y. Nov. 8, 2019).

By failing to object to either a standard award or to proceeding before a single arbitrator, Cento waived any reliance on those Rules as means to limit O'Meara's authority.  Accordingly, the Court will not vacate the Award on that basis.

### c. Manifest Disregard

Cento next maintains that O'Meara's "conduct throughout the arbitration violated [its] due process rights" and that the "Award constitutes 'fruit of the poisonous tree' and a manifest disregard for the law."  (Cento Br. at 8.)  Specifically, Cento theorizes that O'Meara disregarded its due process rights to (1) "a reasonable adjournment to retain new counsel," (2) timely notice of LTF's "increased damages claim," and (3) the chance "to appear pro se" at the arbitration proceedings in light of LTF's increase in its damages request.  (Id. at 10.)  O'Meara's

11

"flagrant contempt for Cento's due process rights," Cento avers, mandates vacatur. (Id. at 11.)

Critically, however, the question is not whether this Court, from first principles, believes that Cento's due process rights were violated. Instead, the Court's examination must center on whether there exists a "barely colorable justification for" O'Meara's decision. T.Co Metals, 592 F.3d at 339 (emphasis omitted). Moreover, to establish manifest disregard, it is not enough for Cento to show that O'Meara violated its due process rights. To be entitled to vacatur, Walton must demonstrate that O'Meara "intentionally defied the law." STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC, 648 F.3d 68, 78 (2d Cir. 2011) (emphasis added). Cento simply does not meet that standard.

First, Cento has not shown that O'Meara disregarded governing law when denying an adjournment. O'Meara "enjoy[ed] broad latitude in exercising [his] discretion to grant or deny a request to adjourn," Mandell, 2011 WL 4585248, at *4, and this Court will not displace the Award "as long as there exists a reasonable basis for [O'Meara's] refusal to grant a postponement," Rai, 739 F. Supp. 2d at 371. Here, O'Meara reasonably could have concluded that an adjournment--which Cento requested less then two weeks before the hearing was to begin and nearly eighteen months after the proceedings had commenced--

12

was unwarranted.[5]  That decision is made more reasonable by the facts that Cento (1) routinely did not appear for preliminary hearings, and (2) repeatedly failed to comply with agreed-upon deadlines.

Moreover, the reason driving Cento's need for an adjournment--i.e., its lack of counsel--was a problem entirely of its own making.  As Cento readily admits, it "actively participated in the arbitration process for nearly two years." (Cento Br. 9.)  It changed course in February 2020--less than one month before the arbitration hearing--after "Cento's owner . . . determined he could no longer afford to participate in the process or pay his attorney's fees and terminated his attorney's representation of Cento."[6]  Essentially, Cento now seeks a judicial bailout for a decision it purports to have made for legitimate business reasons.  Of course, Cento cannot have its

---

[5] See, e.g., Cong. Sec., Inc. v. Fiserv Sec., Inc., No. 02 Civ. 3740 (JSM), 2003 WL 21664678, at *2 (S.D.N.Y. July 15, 2003) ("[T]he arbitrators clearly acted reasonably in denying an application for a continuance made on the day of a hearing . . . .  At the time the continuance was sought, the proceeding had been pending for over a year and a half and ten months earlier, Petitioners had been granted a delay to accommodate their counsel.").

[6] (Cento Br. 9.)  Cento's explanation is confusing to say the least.  As Cento informs the Court, O'Meara told Cento it would cost approximately $35,000 for Cento to participate in the arbitration proceedings.  (Id. at 2.)  That $35,000 is dwarfed by even the original $815,000 sought in damages, let alone LTF's final damages figure of more than $1.8 million.

cake and eat it too.  In other words, Cento plainly has not shown that O'Meara's decision to deny a postponement was "fundamentally unfair."[7]

Second, Cento's contention regarding notice of LTF's seven-figure damages claim ignores other important evidence in the record.  LTF amended its Statement of Claim in July 2019--more than eight months before the arbitration hearing and when Cento was represented by counsel--indicating its intent to seek more than $1.9 million in damages.  The arbitration docket, which was submitted into the record by both parties, confirms this.[8]  Based on that, Cento had months of notice of the facts necessary to protect its contractual rights to a three-arbitrator panel and a reasoned award.  It never did so.  Cento has failed to how LTF's revising its damages figure in its final exhibits--which actually <u>decreased</u> the damages sought by almost $100,000-- violated Cento's due process rights.

---

[7] Cento's reliance on <u>Tempo Shain</u> is misplaced.  (<u>See</u> Cento Reply at 3-4.)  There, the Court of Appeals found that it was fundamentally unfair to proceed with an arbitration hearing where a material witness could not appear due to a sudden and unforeseen family medical emergency.  <u>See</u> <u>Tempo Shain</u>, 120 F.3d at 17-18, 20.  Because Cento alleges no similar medical emergency here, <u>Tempo Shain</u> is inapposite.  <u>See</u> <u>Mandell</u>, 2011 WL 4585248, at *6 (reaching the same conclusion about <u>Tempo Shain</u> when confronted with similar facts).

[8] (<u>See</u> Exhibit 2 to Petition, dated May 28, 2020 [dkt. no. 1-2] at 2; <u>see also</u> Exhibit F to Centrella Decl., dated May 28, 2020 [dkt. no 14-6] at 2 (same document).)

14

Finally, like its eleventh-hour need for an adjournment, Cento's inability to offer evidence or call witnesses was wholly self-inflicted.  Cento never provided its witness and exhibit lists, even after O'Meara granted Cento an extension of time to submit them.  Moreover, Cento did not appear at either of the two final preliminary hearings.  Only then did O'Meara grant LTF's motion <u>in limine</u>, which limited <u>only</u> Cento's ability to present its <u>own evidence and witnesses</u>.  O'Meara did not bar Cento from attending the arbitration hearing or otherwise challenging LTF's evidence and witnesses, but Cento still chose not to attend.  Based on that, Cento had ample "opportunity" to be heard.  That Cento repeatedly chose not to show up, "either by design or poor planning, does not change the fact that the opportunity was presented."  <u>Seneca Ins. Co. Inc. v. Dowers</u>, No. 98 Civ. 4084 (LAP), 1999 WL 144497, at *6 (S.D.N.Y. Mar. 17, 1999) (Preska, J.).

In sum, Cento's due process theory fails to clear the high hurdle that the manifest disregard standard demands.  The Court will not vacate the Award based on those grounds.

### d. <u>Misconduct for Failing to Adjourn</u>

Finally, Cento, contends--for the first time in its reply brief--that O'Meara's "repeated refusal of Cento's adjournment request was fundamentally unfair and constitutes a manifest regard for the law."  (Cento Reply at 2.)  That failure to

adjourn, Cento posits, robbed it of the opportunity to submit material testimony at the arbitration hearing.  (See id. at 3-4.)  Cento maintains that O'Meara's "refusal to grant Cento's continuance requests" resulted in further prejudice because Cento was not able to insist on a three-arbitrator panel or a reasoned award.  (Id. at 5.)

Ordinarily, the Court "do[es] not consider arguments that are raised for the first time in a reply brief."  Clubside, Inc. v. Valentin, 468 F.3d 144, 159 n.5 (2d Cir. 2006).  But setting aside any issues of waiver, Cento's argument simply reframes the same adjournment-based contentions in its initial briefing.  For the reasons discussed above, O'Meara could have reasonably concluded that an adjournment was not warranted.  And "[a]s long as there is at least a barely colorable justification for th[at] decision not to grant an adjournment, the arbitration award should be enforced."  Kober v. Kelly, No. 06 Civ. 3341 (MGC), 2006 WL 1993248, at *2 (S.D.N.Y. July 18, 2006).  The Court, therefore, will not disturb the Award.

## IV.  Conclusion

For the foregoing reasons, LTF's petition to confirm the Award [dkt. no. 1] is GRANTED, and Cento's motion to vacate the Award [dkt. no. 12] is DENIED.  To the extent that LTF would like to recover costs and statutory interest, it may make a separate application consistent with this Court's local rules.

The Clerk of the Court shall mark the matter closed and all pending motions denied as moot.

**SO ORDERED.**

Dated:     December 7, 2020
           New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge